971 So.2d 936 (2007)
Melvin Lamar HUSSEY, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D05-2650.
District Court of Appeal of Florida, Third District.
December 26, 2007.
Bennett H. Brummer, Public Defender, and Maria E. Lauredo, Assistant Public Defender, for appellant.
*937 Bill McCollum, Attorney General, and Nicholas Merlin, Assistant Attorney General, for appellee.
Before WELLS and LAGOA, JJ., and SCHWARTZ, Senior Judge.
SCHWARTZ, Senior Judge.
Hussey appeals from convictions and sentences for battery on a law enforcement officer and resisting the officer without violence as a lesser included offense of resisting with violence, in an incident during a purported Terry stop. We reverse.
That the defendant was "crouching" next to a wall on a public street near closed businesses  where he was clearly seen in broad daylight at 7:40 p.m. on a June afternoon  and that he then walked away from the officer's first attempt to accost him,[1] fell far short of giving the officer the founded suspicion of unlawful activity necessary to justify a Terry stop. See S.P. v. State, 833 So.2d 267, 268 (Fla. 3d DCA 2002); Lee v. State, 868 So.2d 577, 582-83 (Fla. 4th DCA 2004); D.G. v. State, 831 So.2d 256, 257 (Fla. 3d DCA 2002); Chamson v. State, 529 So.2d 1160 (Fla. 3d DCA 1988), review denied, 539 So.2d 476 (Fla.1988); see also Illinois v. Wardlow, 528 U.S. 119, 125, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000) (acknowledging that absent reasonable suspicion or probable cause an "individual has a right to ignore the police and go about his business [and that] any `refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure'" (quoting Florida v. Bostick, 501 U.S. 429, 437, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) (citation omitted))); D.G., 831 So.2d at 257 (same); Slydell v. State, 792 So.2d 667 (Fla. 4th DCA 2001) (same). Compare the state's "main case" of Mitchell v. State, 955 So.2d 640, 641-42 (Fla. 4th DCA 2007) (holding that there was reasonable suspicion that the defendant was loitering and prowling based on the officer's observation of the defendant "in a high crime area, at night, lurking in the shadows of a wooded lot bordered by *938 two homes" and the defendant's acts of fleeing from the uniformed officer and attempting to conceal an object on his person).
Since this is true, the officer was, as a matter of law, not engaged in the lawful "performance" or "execution" of a legal duty as required under sections 784.07(2)(b) and 843.02, Florida Statutes (2002), respectively, to sustain the convictions below.[2] See Tillman v. State, 934 So.2d 1263, 1266, 1273 (Fla.2006) (requirement that "in order to convict a defendant . . . of battery on a law enforcement officer and resisting an officer with violence, the State must prove that the officer was `engaged in the lawful performance of his or her duties' or `in the lawful execution of any legal duty'" not satisfied if Terry stop not supported by reasonable suspicion).
Accordingly, the convictions under review are reversed with directions to discharge the defendant.
Reversed and remanded.
NOTES
[1] The officer testified as follows on direct examination:

[PROSECUTOR:] At some point after you concluded that [unrelated] investigation, did something grab your attention?
[OFFICER:] Yes.
Q. What was it?
A. As I turned, I saw the defendant who was crouching down behind a wall, and as soon as I saw [sic] his direction, he quickly stood up and started to walk pretty quickly on the sidewalk in a westbound direction.
. . . .
Q. What did you do once he popped out of that crouched position?
A. Well, that was kind of unusual for me, unusual behavior, so I jumped into my car and drove towards him.
. . . .
Q. When you proceeded to get into your car, what were you going to do next?
A. I was going to approach him and basically ask him what he was doing.
Q. For what purpose?
A. Basically, like, that was part of the EEI. I mean, it was kind of odd for me to see somebody just quickly jump out of a bushy area behind a wall, and as I was driving towards him, he started to walk pretty fast, expeditiously.
On cross-examination, the officer testified as follows:
[DEFENSE COUNSEL:] And after writing up that report and finishing that investigation, you then happened to notice Mr. Hussey kneeling near a wall; is that right?
[OFFICER:] Yes.
Q. And you said you saw him stand up?
A. Yes.
Q. And you thought that behavior, standing up, was suspicious?
A. Howthe way hewhen I turned 
Q. I think the question wason direct, you said that him standing up caught your attention and was suspicious; isn't that what you testified to?
A. I said when he was crouching down and he quickly stood up and started to walk pretty fast.
[2] Based on the officer's testimony that he recovered a pistol concealed in the defendant's waistband, Hussey was also charged with several firearm offenses. After viewing a video tape of the incident taken from a nearby business, however, he was found not guilty of those crimes, and the trial court, sitting without a jury, also acquitted Hussey of possession of a firearm by a convicted felon.